UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| LISA A. HERRERA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. SACV 15-0258-AJW <br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff alleges that she became disabled on December 24, 2008 due to depression, bipolar disorder, and failed back syndrome.[1] [Administrative Record ("AR") 16, 316-325]. After an administrative hearing, the Administrative Law Judge ("ALJ") issued a written decision denying benefits. [AR 157-172]. On April 20, 2012, the Appeal Council remanded the case for another hearing. [AR 173].

---

[1] Plaintiff filed a prior application for benefits, which was denied on December 23, 2008. [AR 141-152.]

After holding another hearing, the ALJ again issued a written decision denying benefits. [AR 13-60]. The ALJ found that plaintiff had severe impairments consisting of degenerative disc disease of the lumbar spine with laminectomy, fibromyalgia, and affective disorder. [AR 18]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, scaffolds, or ropes; and perform simple routine tasks. [AR 20]. The ALJ found that plaintiff had no past relevant work. [AR 23]. Based on the testimony of a vocational expert, the ALJ determined that plaintiff could perform alternate jobs that exist in significant numbers in the national economy, such as office helper or storage facility clerk. [AR 24]. Therefore, the ALJ found plaintiff not disabled at any time through the date of his decision. [AR 24-25]. After considering additional evidence submitted by plaintiff, the Appeals Council denied plaintiff's request for review of the ALJ's decision. [AR 1-7].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**The ALJ's RFC determination**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because

he failed to properly weigh the medical evidence. Specifically, plaintiff contends that the ALJ failed to give sufficient reasons for rejecting the opinions of Donald Hills, a physician assistant, and Laura Drancea, a nurse practitioner. [See JS 4-14].

The Commissioner's regulations distinguish between opinions from "acceptable medical sources" and those from "other sources." See 20 C.F.R. § 404.1513(a), (d). "Acceptable medical sources" include licensed physicians and psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). Only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to great or controlling weight. SSR 06-03p at *2; see also 20 C.F.R. §§ 404.1502, 416.902. To discount the opinion of a medically acceptable treating source, "the ALJ must provide specific, legitimate reasons based on substantial evidence in the record." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

On the other hand, "other sources" include nurse practitioners, physician assistants, therapists, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ may use other medical source opinions in determining the "severity of [the individual's] impairment(s)" and how it affects the individual's ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d). If the ALJ discounts evidence from "other sources," the ALJ must give "reasons germane to each witness for doing so." Molina, 674 F.3d at 1111 (explaining that an ALJ need only provide germane reasons to disregard lay witness testimony from "other sources"); see also SSR 06-03p at *3, *6 (same).

**Donald Hills**

Donald Hills is a physician assistant at the office of Dr. A. Gerayli, a pain management specialist. On May 3, 2011, Mr. Hills filled out a "physical residual functional capacity questionnaire." Mr. Hills noted that plaintiff suffered from failed back syndrome and radiculopathy. He opined that, due to her back condition, plaintiff was severely limited in her physical functioning and that she would miss work on average more than three times per month. [AR 532-536.]

In his decision, the ALJ rejected Mr. Hills's opinion on the ground that he was not an "acceptable medical source." The ALJ also noted that the opinion was conclusory and unsupported by the evidence, and it "provid[ed] very little explanation of the evidence relied on in forming" the conclusions Mr. Hills reached. [AR 23].

Plaintiff contends that the ALJ erred in finding that Mr. Hills was not an "acceptable medical

3

source." Specifically, she argues that Mr. Hills worked under Dr. Gerayli's close supervision, and therefore that Mr. Hills's opinion should be ascribed to Dr. Gerayli and treated as an opinion from an "acceptable medical source." [JS 6].

In Gomez v. Chater, 74 F.3d 967 (9th Cir. 1996), the Ninth Circuit held that the opinion of a nurse practitioner was properly ascribed to the supervising physician and treated as an opinion from an "acceptable medical source" because the record indicated that the nurse practitioner worked so closely under the supervision of the physician that she became the agent of the physician. In so holding, the court noted that the nurse practitioner consulted with the physician regarding the claimant's treatment on numerous occasions. Gomez, 74 F.3d at 971; see also Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) (stating that a nurse practitioner working in conjunction with a physician can constitute an acceptable medical source, but that a nurse practitioner working on her own constitutes an "other source"); cf. Ramirez v. Astrue, 803 F. Supp. 2d 1075, 1081-1082 (C.D. Cal. 2011) (holding that a physician's co-signature on a client plan prepared by a social worker did not indicate that the social worker "worked with or under the close supervision of [a physician] in treating [the claimant] or in preparing reports," and therefore that "the ALJ was not required to grant the same deference to [the social worker's] opinion that he would grant to a doctor's opinion. Rather, he was only required to explain the weight given to the opinion in sufficient detail so that Plaintiff (and the Court) could understand it") (internal citations omitted); Vasquez v. Astrue, 2009 WL 939339, at *6 n.3 (E.D. Wash. April 3, 2009) (holding that physician assistant's report "signed off" by a superior believed to be a doctor did not constitute an "acceptable medical source" opinion). The record does not contain substantial evidence establishing that Mr. Hills worked under Dr. Gerayli's close supervision.[2] Even if Mr. Hills's evaluation could be considered an acceptable

---

[2] Plaintiff contends that the ALJ should have presumed that Mr. Hills was closely supervised by a physician because California law requires that physician assistants be supervised by physicians. [JS 6 (citing 16 Cal. Code Regs. § 1399.545)]. Contrary to plaintiff's argument, however, section 1399.545 does not require the close supervision necessary to establish that the physician assistant's opinion is that of a treating physician. See 16 Cal. Code Regs. § 1399.545; see also Hernandez v. Colvin, 2014 WL 1800408, at *8 (C.D. Cal. May 6, 2014) (noting that "[n]one of [section 1399.545's requirements] amounts to the level of close supervision required to establish that [the physician assistant's] opinion about Plaintiff's health is the same as that of [the doctor's]") (quoting 16 Cal. Code Regs. § 1399.545(f); Carr v. Colvin, 2016 WL 626729, at *3 (C.D. Cal. Feb. 16, 2016) (same).

medical source opinion, moreover, the ALJ properly rejected it on the grounds that it was conclusory and not supported by the objective medical evidence in the record. [AR 23]. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (stating that an ALJ may discredit treating physician's opinion that is conclusory, brief, and unsupported by medical findings); Thomas, 278 F.3d at 957 (stating that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

In his May 2011 evaluation, Mr. Hills said that plaintiff's diagnosis was failed back syndrome with radicular pain, and that the supporting clinical findings and objective signs were "positive orthopedic tests," "decreased lumbar spine range of motion," and "pain with palpation." [AR 532]. The record shows that plaintiff suffered from a herniated disc and underwent a partial bilateral laminectomy, herniation excision, and bilateral foramintomy in July 2003. [AR 147]. After the surgery, she continued to suffer from back pain. [See, e.g., AR 477]. Plaintiff's prior application for disability benefits, which was filed in 2006, was based in part on her back condition. [AR 141]. The ALJ who finally denied that application relied on the opinion of a state agency examining orthopedist, who opined that plaintiff retained the ability to perform a range of light work. [AR 145-146]. That ALJ also noted that "[w]hile [plaintiff's] back pain complaints have been treated aggressively with narcotics, including methadone, there is evidence of narcotics abuse. . . . This raises serious concern whether [plaintiff] truly experiences profound pain or whether she alleges profound pain in order to feed a prescription narcotics addiction." [AR 147]. The ALJ's December 23, 2008 decision denying benefits [AR 145-156] was affirmed by this court. See Herrera v. Astrue, 2010 WL 4718805, at *10 (C.D. Cal. Nov. 15, 2010).

Plaintiff's current application for benefits relates to the period following the December 2008 decision denying her prior application for benefits. There is no allegation or any evidence in the record indicating that her back condition has worsened since December 2008. As the ALJ noted, an October 2008 physical examination by Dr. Gerayli revealed no significant lumbar spine tenderness or spasms, "slightly reduced

but adequate" range of motion, negative straight leg raising rest[3], negative Patrick test[4], adequate strength in the lower extremities, normal sensation, and normal symmetric reflexes. Plaintiff had been "started on methadone between 20 mg to 40 mg per day which has taken care of her pain very well." [AR 21, 412-415]. January 2009 physical therapy progress reports indicate that plaintiff exhibited good improvement in her lumbosacral spine range of motion and that plaintiff self-discharged by not returning for follow-up after January 27, 2009. [AR 22, 437]. A 2011 x-ray of the lumbar spine showed degenerative disc disease, but no indication that plaintiff's back condition had worsened. [See AR 581]. Aside from this x-ray, the record contains no other objective medical evidence regarding plaintiff's back. The ALJ also observed that since 2008, plaintiff's treatment for her back disorder has consisted mostly of medication refills, including methadone, obtained from the pain management center where Dr. Gerayli and Mr. Hills work. [See AR 21-22, 477]. The ALJ noted that plaintiff's medications have been relatively effective in controlling her symptoms. [See AR 23, 414, 480-481; see also AR 477, 619-620, 750, 754, 756, 758].

As for the opinion evidence, in 2009 and 2010, nonexamining state agency physicians reviewed plaintiff's medical records and opined that she retained the residual functional capacity to perform light work with some additional limitations. [See AR 468-472, 516-520]. Similarly, during the January 11, 2011 administrative hearing, the nonexamining medical expert, Dr. Joseph Jensen, an orthopedic surgeon, opined that plaintiff was capable of light work with additional limitations. [AR 88-89].

The ALJ permissibly concluded that Mr. Hills's opinion was "quite conclusory," provided "very little explanation" for his conclusions, and was not supported by the evidence of record.[5] [See AR 23, 532-

---

[3]   A positive straight leg raising test is indicative of nerve root compression or impingement. See Stedmans Medical Dictionary 908450 straight-leg raising test (database updated Nov. 2014).

[4]   A positive Patrick test is indicative of the presence of sacroiliac disease. See Stedmans Medical Dictionary 907150 Patrick Test (database updated Nov. 2014).

[5]   After the ALJ issued his decision, plaintiff submitted to the Appeals Council a March 13, 2013 opinion written by Dr. Gerayli. [AR 743-747]. In denying review, the Appeals Council considered plaintiff's new evidence, but determined that it did not "provide a basis for changing the [ALJ's] decision." [AR 1-7.] Because the Appeals Council considered the new evidence, it became part of the administrative record that this court reviews in determining whether the ALJ's decision was supported by substantial evidence. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012); see also Taylor, 659 F.3d at 1232. Taking Dr. Gerayli's opinion into account, however, the court finds that the ALJ's decision is still supported by substantial evidence. As noted

536]. See Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957.

**Laura Drancea**

On April 28, 2011, nurse practitioner Laura Drancea filled out a "Mental Impairment Questionnaire." She noted plaintiff's diagnosis of bipolar disorder. She assessed plaintiff with a Global Assessment of Functioning ("GAF") of 35.[6] She opined that plaintiff's mental impairment resulted in marked restriction of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies of concentration, persistence or pace, and repeated episodes of decompensation. She further opined that plaintiff's impairments would cause her to be absent from work more than three times per month. [AR 527-30].

Plaintiff does not contend that Ms. Drancea should have been considered an acceptable medical source [see JS 9], and there is nothing in the record indicating that she was working with a physician when she produced her opinion. Accordingly, the ALJ needed to give only germane reasons for discounting her "other source" opinion. Molina, 674 F.3d at 1111 (holding that where the record did not show that a physician assistant worked under a physician's close supervision, the ALJ permissibly rejected her opinion for "germane reasons"); see also SSR 06-03p at *3, *6.

The ALJ permissibly rejected Ms. Drancea's opinion because it was conclusory and unsupported by the evidence. [AR 20, 23]. Ms. Drancea's opinion was provided in a conclusory "checkbox" form, and it did not explain the basis for her conclusions. [See AR 527-530]. Furthermore, it contradicted the other

---

above, the ALJ's reasons for rejecting Mr. Hills's opinion were legally sufficient even if Mr. Hills is considered an acceptable treating medical source. Since Dr. Gerayli's opinion is virtually identical to Mr. Hills's [see AR 532-536, 743-747], the ALJ's reasons for rejecting Mr. Hills's opinion—that it was conclusory and was not supported by the record— apply with equal force to Dr. Gerayli's opinion. See Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957.

[6] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). A GAF score of 35 signifies some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994)(revised 2002).

medical opinions in the record. Indeed, no "acceptable medical source" opined that plaintiff is as limited as Ms. Drancea claims or that she is disabled by her mental impairments. Rather, the nonexamining state agency physicians opined that plaintiff's mental impairments result in only moderate difficulties in maintaining concentration, persistence, or pace. [AR 454-464, 508]. Therefore, the ALJ did not err in rejecting Ms. Drancea's opinion. See Molina, 674 F. 3d at 1111 (holding that the ALJ permissibly rejected a "standardized, check-the-box form in which [a physician assistant] failed to provide supporting reasons or clinical findings" and whose opinion conflicted with the opinion of an examining psychiatrist).

**Credibility finding**

Plaintiff contends that the ALJ failed to give sufficient reasons for rejecting her testimony regarding her subjective symptoms. [JS 23-27].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the March 5, 2013 administrative hearing, plaintiff testified that she suffers from bipolar disorder, failed back syndrome, diabetes, fibromyalgia, and restless leg syndrome. [AR 36, 38, 45-46, 50-51]. She

sometimes has panic attacks and has a fear of being around people. [AR 42]. She has severe memory loss and headaches that can last up to three days. [AR 43, 49-50]. She stated that she has back pain radiating down her legs to her feet. [AR 46]. She further testified that she can only walk 5 blocks, sit for 20 minutes at a time, and lift and carry 5 pounds. [AR 47].

In his decision, the ALJ gave legally sufficient reasons for rejecting plaintiff's credibility. First, the ALJ noted that "[t]he evidence of record does not fully support [plaintiff's] allegations." [AR 21]. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857. Here, there is no objective medical evidence in the record—and plaintiff cites none—indicating that her physical or mental impairments cause her to be as severely limited as she alleges.

Second, the ALJ noted that plaintiff's prescribed medications "have been relatively effective in controlling [plaintiff's] symptoms." [AR 22-23]. The ALJ may properly discredit a claimant's pain allegations when the evidence shows that her pain is controllable by medication. See Morgan, 169 F.3d at 599. In this case, Dr. Gerayli noted that plaintiff's medication "has taken care of her pain very well." [AR 477; see also 480-481, 619-620, 750, 754, 756, 758]. See Abreu v. Astrue, 303 Fed. Appx. 556, 558 (9th Cir. 2009) (holding that substantial evidence supported the ALJ's credibility findings where ALJ observed that claimant mostly saw a doctor for medication refills and opined that "[f]or the most part, medication regimens appear to be effective in pain control").

Third, the ALJ cited plaintiff's daily activities. [AR 23.] The ALJ may consider plaintiff's daily activities as one factor in weighing a claimant's credibility. See Morgan, 169 F.3d at 600 (upholding the ALJ's adverse credibility determination where the claimant was able to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child"); see also Thune v. Astrue, 499 Fed. Appx. 701, 703 (9th Cir. 2012) (holding that "[t]he ALJ properly discredited [the claimant's] allegations of pain because they contradicted her testimony regarding her daily activities, which included gardening, cleaning, cooking with cast-iron cookware and running errands."). Plaintiff's daily activities included caring for her two children, taking care of her personal needs, cooking, cleaning the house, driving, shopping for food, handling money, and doing laundry. [AR 66, 357-360, 363]. The ALJ's reliance on plaintiff's daily activities as a factor in his credibility determination was proper.

Finally, the ALJ noted that plaintiff has not "generally received the type of medical treatment one would expect for a totally disabled person. The record reflects significant gaps in [plaintiff's] history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms." [AR 22]. During the relevant period (that is, beginning in January 2009), plaintiff did not follow up with physical therapy that she reported was helping her condition, and she did not seek treatment from an orthopedist or neurologist for her allegedly disabling back condition. Instead, she mostly saw Dr. Gerayli, her internist Dr. Emily Scott, and Ms. Drancea for medication refills. The ALJ pointed to evidence indicating that her medications were effective. [See AR 21-23, 414, 477, 480-481, 619-620, 750, 754, 756, 758].

Even if the ALJ's reliance on plaintiff's treatment history in assessing her credibility was improper, as she contends, any error was harmless. An "ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Molina, 674 F.13 at 1115. The other reasons given by the ALJ are supported by substantial evidence and independently afford clear and convincing grounds to support the ALJ's ultimate credibility determination. See Carmickle, 533 F.3d at 1162-1163 (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence); Batson, 359 F.3d at 1197 (stating that: "in light of all the other reasons given by the ALJ for [the claimant's] lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied," any error was "harmless and does not negate the validity of the ALJ's ultimate conclusion that [the claimant's] testimony was not credible").

Accordingly, reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's credibility.

///
///
///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

May 26, 2016

_____
ANDREW J. WISTRICH
United States Magistrate Judge